UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON
CIVIL CASE NO: 05-31-JGW

THE ESTATE OF
VICTORIA HELLMANN, ET AL.,                                    PLAINTIFFS

V.

KENTON COUNTY JAILER,
TERRY CARL, ET AL.,                                           DEFENDANTS

### MEMORANDUM ORDER

A brief history of this case was summarized in this court's last order, and is repeated here for the convenience of the court.

Plaintiffs, the estate and family of decedent Victoria Hellmann, filed suit against defendants pursuant to 42 U.S.C. §1983, seeking monetary damages for the death of the decedent on February 12, 2004. Ms. Hellmann died while she was incarcerated in the Kenton County Jail.

Discovery closed on June 9, 2006, with the exception of an agreed order permitting the deposition of Steven Woods outside of that deadline. The parties agreed to file dispositive motions not later than October 31, 2006, and defendants filed a motion for summary judgment on that date. Plaintiffs now seek an indeterminate extension for filing a response to the defendants' motion.[1] No explanation is provided for an extension in the original motion other than that plaintiffs need additional time to "gather the appropriate information and respond accordingly." In a four-page response to plaintiffs' one-page motion, defendants object to any extension, noting the previous extensions granted to plaintiffs, the close of discovery months ago, and a concern that defendants will be prejudiced if plaintiffs are permitted to reopen discovery to gather new information.

On November 9, 2006, plaintiffs filed a "supplemental memorandum" in support of their motion. In that memorandum, co-counsel Paul Dickman explains that the primary reason for the requested extension is his scheduled trip to Australia from November 15-28, 2006. Counsel represents that- contrary to his

---

[1]Plaintiffs' initial motion failed to request any specific period of extension or to include a proposed order as required by local rules. However, it is apparent from defendants' response that plaintiffs served a proposed order on defendants which sought a 60 day extension.

> initial motion- he "does not intend to collect additional information, facts or evidence during the extended time period."
>
> The court concludes that the defendants will not be prejudiced by a relatively short extension.  This court will not permit the reopening of discovery pursuant to Rule 56(f), Fed. R. Civ. P., except for truly extraordinary reasons, supported by appropriate affidavit under the Rule.  *The court accepts the representation of counsel that he does not intend to seek additional discovery*.
>
> Plaintiffs' response is presently due on or before November 18, 2006.  Plaintiffs' counsel's scheduled trip begins only a few days prior to that deadline, and lasts a mere two weeks.  An extension of thirty days should prove more than sufficient.

[DE #36 , 11/13/06 Order (emphasis added)].  In the same order, the court granted plaintiffs' request for an extension of time, but permitted only a thirty day extension until December 18, 2006, warning that "NO FURTHER EXTENSIONS WILL BE GRANTED."

Plaintiffs timely filed their response to the pending motion for summary judgment on December 18, 2006.   Attached to that response was the affidavit of Billie Antoun, a former inmate of the Kenton County Jail, also dated December 18, 2006.  In her affidavit, Ms. Antoun refutes the version of facts presented by defendants in their motion for summary judgment, specifically alleging: 1) that it "appeared" that the decedent was "on something other than alcohol" during intake; 2) that Ms. Antoun observed a female officer reviewing the contents of Ms. Hellmann's purse during intake, and overheard her state "'Oxyconton,' apparently identifying one of the bottles as such;" 3) that it took two hours after other inmates called for medical help for Ms. Hellmann for medical personnel to respond; and 4) that defendant Kloeker "kicked her with her foot to turn her" but did not render any medical attention prior to Ms. Hellmann's death approximately thirty minutes later.

On December 28, 2006 defendants moved to strike the affidavit of Billie Antoun on

grounds that the affidavit reflects new facts not alleged in the Complaint and never previously disclosed within the discovery period, in direct contravention of this court's November 13, 2006 order.

In response to the motion to strike, plaintiffs counter that it was clear during the deposition of Terry Carl on June 2, 2006 that "both the identity and the anticipated testimony of Ms. Antoun were known and available to all parties." The following portions of the transcript of the deposition of Mr. Carl are pertinent to the disclosure of Ms. Antoun:

> Q. If you found out that there was a key witness that was - that observed what happened to Ms. Hellmann, but yet her statement was not in that report [Internal Affairs Report], would that cause you any concern?
>
> A. It didn't concern me because he was thorough in his investigation.

TR at 93, lines 18-23.

> Q. Would you agree with me, though, that if there was an inmate that observed Ms. Hellmann before and while she was dying, that that is something that should be contained – that you would like –
>
>> MS. STEWART (for defendants): Let me just note this objection. If you are implying that you know of some inmate, you're under a continuing duty under your own Plaintiffs' disclosures to disclose who that witness would be.
>>
>> MR. DICKMAN (for plaintiffs): I am – and I'm aware of that.
>>
>> MS. STEWART: So, if you're telling us you have a witness there that has not been disclosed, then I object to that.
>> ...
>> MS. STEWART: He's only – you've asked him over and over, and he's testified he knows of no other inmate.
>>
>> MR. DICKMAN: Well, I will represent to you that I have learned of another and I just learned of her today.
>>
>> MR. NORDLOH: I'm sorry, I didn't understand you, Paul.

3

> MR. DICKMAN: I'm sorry. I did learn of another inmate that was in there with them, that was included in – a statement was included from her in Scroggin's report from the Kentucky State Police.
>
> I just now talked to her today, and I want to disclose her to you guys today. Because nowhere, anywhere in the Internal Affairs Report, was she mentioned.
> ....
>
> BY MR. DICKMAN:
> Q. Have you ever heard of –now I say that, I lost it – Bonnie Antoun, A-N-T-O-U-N?
>
> A. No, never heard of her.
>
> Q. Are you familiar with –let's do it this way. Take a look at what we'll call Exhibit 7 . . ..

TR at 94-96.

> Q. Well, here's my question. If you read what Scroggin says about Ms. Antoun – and I understand his report speaks for itself and he can testify about his investigation. But do you see on there, where it says: Ms. Antoun – and I'm now the third paragraph up, about halfway through – and I'm quoting from the report. It says: Ms. Antoun stated that the nurse arrived and showed very little concern about Ms. Hellmann. And then it says that Ms. Antoun advised that Deputy Edwards was noticeably upset with the nurse about her disconcern.
>
> Have you ever read that prior to today?
>
> A. No.
>
> Q. Do you know why Ms. Antoun was never identified, at least in the disclosures?
>
>> MS. STEWART: Objection. He – we adopt – Terry Carl adopted the disclosures from Kenton County, to the extent what we disclosed was at the time the information we had. This is – and I don't know – this is the first time I've seen this document.
>>
>> ....
>> MS. STEWART: ...And I will tell you that, as the attorney for Terry Carl, we disclosed every witness that we knew of based upon the information we had.

4

> ...
> MR. NORDLOH: The disclosures in this case were prepared by me on behalf of Kenton County and the Fiscal Court Commissioners. And I believe Mary Ann adopted those on behalf of Terry and her clients as part of the initial disclosures. And I think it was a pretty exhaustive disclosure that included the Internal Affairs document.
>
> And I'm looking through the Internal Affairs document and contained in that document is the Kenton County Detention Center booking sheet for Billie Shawn Antoun.
>
> MR. DICKMAN: Oh. I guess we all missed it, then.
>
> MR. NORDLOH: So, I think for the record and, you know, in the spirit of saving time here, *it's our position she was disclosed in the Internal Affairs document*. We can introduce this as an exhibit.

*Id.* at 102 (emphasis added)

> MR. DICKMAN: Well, let me say that, first of all, I'm not accusing anybody of hiding the ball. But if she is in there – because I went through and listed, I thought, everybody that was in here, as well – the whole purpose of me bringing this up is, I want you to know *she's somebody we are going to have testify. And while we're on the record, she's available for deposition and –*

*Id.* at 102 (emphasis added).

> BY MR. DICKMAN:
> Q. Mr. Carl, you're – is it safe to say this is the first time you saw this in Mr. – or Officer Scroggin's report, about Ms. Antoun's – if I'm saying her name correctly – concern about the nurses showing, quote, very little concern about Ms. Hellmann?
>
> A. That's correct, I didn't.

*Id.* at 103. Plaintiffs point to no other testimony during the deposition of Terry Carl which concerns Ms. Antoun or the statements she apparently made to investigators.

Officer Scroggin's report, used as an exhibit to Mr. Carl's deposition, includes a narrative of that officer's interviews with various witnesses to the death of Ms. Hellmann. In relevant

5

part, the report states:

> On 2/12/04 at approximately 2100 hours Detective Scroggin spoke with inmate Billie Antown who corroborated Ms. Napier's version of the incident. Ms. Antown stated that Deputy Edwards seemed concerned about Ms. Hellman's condition and requested the nurse on duty, Tamara Smith, to examine Ms. Hellman. Ms. Antown stated that the nurse arrived and showed very little concern about Ms. Hellman. Ms. Antown advised that Deputy Edwards was noticeably upset with the nurse about her disconcern. Detective Scroggin discovered in a later interview that the first nurse who responded was actually a C.M.A. (Lynn) not an L.P.N. The CMA only distributes medication and does not diagnose illness.

A subsequent Internal Affairs Report by Officer Colvin reflects an investigation which included interviews with most witnesses, with a notation that Ms. Antoun was unavailable to give a statement. TR of Terry Carl's Deposition at 102.

Plaintiffs argue that they should not be penalized for the defendants' own failure to depose "a known and disclosed eyewitness to Ms. Hellmann's death." Plaintiffs contend that "the gist of her observations" has been known since the beginning of this case since it was included in the disclosure of the Internal Affairs Report by the defendants themselves. However, none of the four statements referenced in Ms. Antoun's December 18, 2006 affidavit were reflected in any way in prior disclosures by either plaintiffs or defendants. The only things known about Ms. Antoun prior to the close of discovery were her identity and the limited statement included in the Scroggins report. That statement reflected only that Ms. Antoun stated that defendant Kloeke "showed very little concern about Ms. Hellman" and that "Deputy Edwards was noticeably upset with the nurse [defendant Kloeke] about her disconcern." There was no indication in the Scroggins report or in any other document or discovery response that Ms. Antoun was present during intake, that she saw or observed anything suggesting that the decedent had ingested oxyconton, that it took two hours for defendant Kloeke to arrive, or that

6

she "kicked" the decedent without rendering any medical aid.

At the deposition of Terry Carl on June 2, 2006, all attorneys present expressed some surprise as to the existence of Ms. Antoun. Plaintiffs' counsel first represented that he was disclosing her identity as a witness during the deposition, questioning why she had not been previously disclosed by defendants. Defense counsel responded that to the extent that her name was listed in the Internal Affairs Report, which had been disclosed, she had been sufficiently disclosed. Plaintiffs' counsel replied that he did not mean to suggest that defendants were hiding the existence of Ms. Antoun, noting that "I guess we all missed" the inclusion of her name on the Internal Affairs Report.

In a reply memorandum, defendants acknowledge that they have never denied knowing that Ms. Antoun existed given that she was listed both in the Internal Affairs Report and the related Scroggins report. What defendants rightly object to is the insertion of new facts and new allegations never previously disclosed or raised by plaintiff, particularly against defendant Lynn Kloeker, in order to defeat summary judgment. Defendants note that the allegations contained in the complaint and developed prior to the close of discovery in June 2006 are contrary to facts alleged by Ms. Antoun in her recent affidavit, filed months after the close of discovery. Plaintiffs were under a continuing obligation to identify all facts known to them which supported the allegations against each defendant. Plaintiffs referred to the Internal Affairs report, but never supplemented their response.

Up until the filing of Antoun's affidavit, plaintiffs never alleged that Ms. Hellmann was in her cell for "hours" as alleged in the affidavit; in fact, time entries on jail records controvert that allegation and were never previously disputed by plaintiffs. Likewise, there was no prior

7

allegation that any person at the jail had any knowledge that Ms. Hellmann had ingested oxycontin, much less that jail personnel had discovered oxycontin during the intake process. On the contrary, plaintiffs stipulated in their own admissions that oxycontin was not on Hellmann's person at the time of her arrest. Much of defendants' motion for summary judgment is predicated on what had been -prior to the affidavit- undisputed evidence that defendants had no knowledge of Ms. Hellmann's ingestion of oxyconton. Up until the filing of the Antoun affidavit, there was no evidence contradicting defendant Kloeker's testimony that she rendered appropriate medical attention. Ms. Antoun's statements in the Scroggins report reflect only that the "nurse" (not defendant Kloeker), "showed very little concern." A perception that the defendant "showed very little concern" without more does not refute Kloeker's statements that she gave medical attention.

The affidavit was obtained by plaintiffs' counsel during an extension of time in which to respond to the defendants' summary judgment motion, at a time when counsel expressly represented to this court that he did not intend "to collect additional information, facts or evidence during the extended time period." To the extent that counsel was aware of Ms. Antoun's statements prior to the close of discovery, he was under an obligation to disclose those statements to the defendants by supplementing his prior discovery responses. To the extent that counsel became aware of the statements shortly before the affidavit was filed, he violated this court's order precluding him from conducting additional discovery. In either event, striking the affidavit is the only remedy which can prevent undue prejudice to the defendants which would otherwise result from the new allegations contained therein.

Accordingly, **IT IS ORDERED THAT:**

1.  Defendants' motion to strike the affidavit attached to plaintiffs' response to defendants' motion for summary judgment [DE #41] is **granted**;

2.  The affidavit attached to plaintiffs' response [DE #39 , Exhibit 1] is hereby stricken from the record and will not be further considered by this court.

This the 5th of February, 2007.

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge